IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ANITA LOUISE HICKS,

            Plaintiff,

vs.                              Case No. 10-1046-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

            Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On August 17, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 10-19). Plaintiff alleges that she has been disabled since May 31, 2003 (R. at 10). Plaintiff is insured for disability insurance benefits through December 31, 2008 (R. at 12). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative

disc disease of the cervical spine, possible fibromyalgia, hypothyroidism and history of atrial fibrillation. The ALJ also found at step two that plaintiff's mental impairments were nonsevere (R. at 12-13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 14), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 17). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III. Did the ALJ err in his consideration of the medical opinion evidence when making his RFC findings?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

    In making his RFC findings, the ALJ gave "substantial weight" to the state agency RFC assessment prepared by Dr.

Siemsen on November 7, 2008 (R. at 17, 337-345).  By contrast, the ALJ gave "little weight" to the opinions of Dr. Murati because Dr. Murati identified the restrictions as temporary (R. at 15).  The ALJ also gave "little weight" to the opinions of Dr. Stein (R. at 15).  Finally, the ALJ gave little weight to the opinions contained in a functional capacity evaluation, noting that plaintiff was "self limiting" during the test (R. at 15), and because the ALJ found that the restrictions were not consistent with credible objective signs and findings of a significant upper extremity or neck impairment (R. at 17).  Thus, the ALJ relied almost exclusively on the medical opinions of Dr. Siemsen, while giving little weight to other medical opinions, when making his RFC findings.

In his assessment, Dr. Siemsen marked a box indicating no manipulative limitations.  However, Dr. Siemsen, under manipulative limitations, stated the following:

> **Clmt [claimant] is limit to no rapid repetitive movement** she does not show to have any atrophy in her muscles.

(R. at 340, emphasis added).  The ALJ did not mention this opinion by Dr. Siemsen, and despite the fact that he gave great weight to this opinion, he offered no explanation for not including this limitation in his RFC findings.[1]

---

[1] Defendant, in his brief, erroneously asserted that the assessment did not include this limitation (Doc. 23 at 5).

7

In the case of Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1186-1187 (D. Kan. 2003), the ALJ purported to base his RFC findings on the state agency RFC assessment, but failed to explain why he made findings inconsistent with the assessment, or why he rejected portions of the assessment. For this reason, the court held that the ALJ failed to comply with SSR 96-8p.

Dr. Siemsen stated that claimant is limited to no rapid repetitive movement. According to SSR 96-8p, if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. The ALJ failed to mention this opinion by Dr. Siemsen, and failed to explain why this limitation was not included in his RFC findings even though the ALJ stated that he gave "substantial weight" to the opinions of Dr. Siemsen.

In his independent medical examination, Dr. Stein stated the following:

> In my opinion, she has sustained some permanent partial impairment of function on the basis of soft tissue injury from repetitive activity...
>
> Because I believe that the patient's symptomatology is a result of repetitive use, I recommend that in future she should avoid repetitive activity of the upper extremities as defined by repeating a specific activity more than 60 times per hour for more than two hours in an eight-hour workday or continuous activity such as keyboarding for more than one hour at a time or more than two hours in

a workday.

(R. at 240). The ALJ noted this limitation by Dr. Stein, but stated that this opinion is given little weight as there were minimal objective findings to support upper extremity limitations (R. at 15). However, the ALJ did not cite to any medical opinion evidence to support this assertion. An ALJ is not a medical expert on identifying the clinical signs typically associated with soft tissue injury from repetitive activity resulting in upper extremity limitations. The ALJ is not entitled to *sua sponte* render a medical judgment of what he thinks are the clinical signs typically associated with soft tissue injury from repetitive activity without some type of support for this determination. The duty of the ALJ is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. See Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

Furthermore, in his assessment, Dr. Siemsen noted that Dr. Stein recommended that plaintiff avoid rapid repetitive movement and should not use items such as a keyboard for more than two hours in an eight hour workday (R. at 343). Dr. Siemsen gave partial weight to the opinion of Dr. Stein, and included in his assessment that plaintiff be limited to no rapid repetitive movement (R. at 340). Clearly, Dr. Stein and Dr. Siemsen are in agreement that the evidence indicates that plaintiff should avoid

9

repetitive activity of the upper extremities. The ALJ does not cite to any medical opinion evidence that indicates that plaintiff has no such limitation. This case shall therefore be remanded in order for the ALJ to consider the opinions of Dr. Siemsen and Dr. Stein that plaintiff is limited to no rapid repetitive movement of the upper extremities, and either include that limitation in plaintiff's RFC, or provide a reasonable explanation for not including that limitation in her RFC.

Dr. Siemsen also limited plaintiff to occasional stooping (R. at 339). The ALJ again, without explanation, did not include this limitation in his RFC findings. The court would note that SSR 96-9p states that a limitation to occasional stooping, by itself, would only minimally erode the unskilled sedentary base. 1996 WL 374185 at *8. SSR 85-15 states that if a person can stoop occasionally in order to lift objects, the sedentary and light occupational base is virtually intact. 1985 WL 56857 at *7. SSR 83-10 indicates that the lifting requirement for the majority of light jobs can be accomplished with occasional stooping. SSR 83-10 also indicates, under sedentary work, that by its very nature, work performed primarily in a seated position entails no significant stooping. 1983 WL 31251 at *6, 5. Although the ALJ should consider whether to include this limitation when the case is remanded, the Social Security Rulings make clear that a limitation to occasional stooping would have

little impact on a person's ability to perform light or sedentary work.

When this case is remanded, the ALJ shall reevaluate all the medical opinion evidence, especially in light of the fact that Dr. Stein and Dr. Siemsen agreed that plaintiff should avoid repetitive activity of the upper extremities.[2] An ALJ must not consider the opinions of medical sources in isolation, but those opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other medical sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical sources, and the need for the ALJ to take this into consideration. See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

In his decision, as part of his finding that plaintiff has no severe mental limitations, the ALJ found that plaintiff had no limitation in activities of daily living or in social functioning (R. at 13). Plaintiff argues that the ALJ should have considered

---

[2]On remand, these two medical opinions should be considered along with the opinion of Dr. Wilkinson that plaintiff is limited to occasional fine hand manipulation and simple grasping (R. at 256). Although Dr. Wilkinson's limitations vary somewhat from that of Dr. Stein and Dr. Siemsen, all three medical opinions concluded that the evidence established some degree of upper extremity limitations.

11

the opinions of Dr. Schulman and Dr. Warrender that plaintiff had mild limitations in these two areas (R. at 312, 322, 336).  On remand, these opinions should be considered by the ALJ.  However, the court would note that there is no medical opinion evidence that plaintiff has any mental limitations that would impact her ability to work.  The ALJ gave great weight to the opinion of Dr. Allen (R. at 13), who indicated, after a mental status exam of the plaintiff, that plaintiff is capable of sustaining some of the skills necessary for gainful employment from a mental health standpoint.  Dr. Allen found plaintiff able to understand and carry out simple instructions, her attention and concentration were found to be adequate enough for most basic tasks, she can get along with coworkers and supervisors, she could adapt to the demands of a workplace including productivity and attendance, and she was found to be persistent with required tasks (R. at 309).  The court finds no error by the ALJ in his consideration and reliance on the opinions of Dr. Allen.

**IV. Other issues raised by plaintiff**

Plaintiff has raised other issues in his brief, including, but not limited to, the ALJ's consideration of plaintiff's credibility.  The court will not reach these remaining issues because they may be affected by the ALJ's resolution of the case after giving further consideration to the medical opinion evidence as set forth above.  See Robinson v. Barnhart, 366 F.3d

1078, 1085 (10th Cir. 2004).

The court would note that the ALJ found plaintiff not fully credible because there was a gap in treatment from 2003 to early 2007. On remand, the ALJ shall consider such evidence in light of the following guidelines the court previously set forth in Essman v. Astrue, Case No. 09-4001-SAC (D. Kan. Dec. 16, 2009):

> ...before the ALJ may rely on a claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). This analysis applies when noncompliance with a physician's recommendation is used as part of the credibility determination. Piatt v. Barnhart, 231 F. Supp.2d 1128, 1129 (D. Kan. Nov. 15, 2002)(Robinson, J.); Silverson v. Barnhart, Case No. 01-1190-MLB (D. Kan. May 14, 2002)(Belot, J.); Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1294-1296 (D. Kan. (April 15, 2002)(Crow, S.J.).
>
> Defendant contends that the Frey test is not applicable in this case. However, the ALJ appears to have discounted plaintiff's credibility because he quit taking prescription medications. Thus, this is not a situation where the Frey test is not required because the treatment or medication had not been prescribed, and the ALJ is simply considering what attempts the claimant made to relieve their pain. See McAfee v. Barnhart, 324 F. Supp.2d 1191, 1201 (D. Kan. 2004); Jesse v. Barnhart, 323 F. Supp.2d 1100, 1108 (D. Kan. 2004); Billups v. Barnhart, 322 F. Supp.2d 1220, 1226 (D. Kan.

13

2004).

Essman, Doc. 23 at 20-21.

Furthermore, while failure to seek treatment may be probative of severity, the ALJ has a basic duty of inquiry to ask the plaintiff why he/she did not seek treatment, or why it was sporadic.  Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003).  Similarly, SSR 96-7p states the following:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7.  See Madron v. Astrue, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009).

The 10th Circuit, relying on the case of Thompson v. Sullivan, 987 F.2d 1482, 1489-90 (10th Cir. 1993), has repeatedly

14

held that the inability to pay may justify a claimant's failure to pursue or seek treatment. Threet v. Barnhart, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003); Norris v. Apfel, 215 F.3d 1337 (table), 2000 WL 504882 at *8 (10th Cir. Apr. 28, 2000); Smith v. Apfel, 149 F.3d 1191 (table), 1998 WL 321176 at *4 (10th Cir. June 8, 1998); Snead v. Callahan, 129 F.3d 131 (table), 1997 WL 687660 at *4 (10th Cir. Oct. 31, 1997); see also Eason v. Chater, 951 F. Supp. 1556, 1562 (D. N.M. 1996)(claimant should not be penalized for failing to seek treatment that they cannot afford); Hockenhull v. Bowen, 723 F. Supp. 555, 557 (D. Colo. 1989) (evidence of nontreatment is of little weight when claimant's failure to seek medical treatment can be attributed to their inability to pay for such treatment).

The court would also note that at step five, the ALJ erroneously found that plaintiff was 45 years old on the date of the ALJ decision (R. at 17). Plaintiff was born on April 15, 1958 (R. at 17), and was therefore 50 years old on December 31, 2008, when she was last insured. This error was acknowledged by the defendant in his brief (Doc. 23 at 11). On remand, the ALJ must consider plaintiff as a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d).

**V. Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?**

When a decision of the Commissioner is reversed, it is

within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits. When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion. Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993). A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits. Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545 (10th Cir. 1987). Thus, relevant factors to consider are the length of time the matter has been pending, and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006). The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to

benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

This case has been pending for less than 3 years (plaintiff filed her disability claim on April 23, 2008 (R. at 10)).  The next factor for the court to consider is whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits.  The court should determine whether substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits.

This case is being remanded because of the ALJ's failure to either include a limitation set forth by Dr. Siemsen, or provide a reasonable explanation for not including the limitation.  This failure is especially problematic in light of the fact that the ALJ asserted that he gave substantial weight to that opinion; furthermore, this opinion by Dr. Siemsen is supported by the opinion of Dr. Stein.  However, the medical evidence varies regarding other limitations, including whether plaintiff can perform light work, or is limited to sedentary work.  Dr. Siemsen, who indicated that plaintiff can perform light work, discussed a number of medical records in his report, including the reports and opinions of Dr. Murati, Dr. Wilkinson, and Dr. Stein (R. at 338, 343-344).  On these facts, the court cannot say that substantial and uncontradicted evidence in the record as a

17

whole indicates that plaintiff is disabled and entitled to benefits. Therefore, the court concludes that a remand to properly consider the medical evidence would serve a useful purpose in this case.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of March 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge